IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LANDSTAR HOMES DALLAS, LTD., | § § § | |
| Plaintiff, | § § | Civil Action No. |
| v. | § § | 3:10-CV-0014-K |
| MID-CONTINENT CASUALTY COMPANY and GREAT AMERICAN INSURANCE COMPANY, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendants Mid-Continent Casualty Company and Great American Insurance Company's Motion for Summary Judgment (Doc. No. 32); (2) Plaintiff Landstar Homes Dallas, Ltd.'s ("Landstar") Motion for Partial Summary Judgment (Doc. No. 35); (3) Landstar's Motion to Strike Mid-Continent's Reply Brief Appendix (Doc. No. 47); and (4) Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence. After review and consideration of the motions, responses, replies, summary judgment evidence, and the applicable law, Defendants' Motion for Summary Judgment is **DENIED**, Landstar's Motion for Partial Summary Judgment is **GRANTED**, Landstar's Motion to Strike is **DENIED as moot**, and Defendants' Motion for Leave to File is **DENIED as moot**.

-1-

I.  Background

Landstar is a homebuilder based in Garland, Texas. Both Great American Insurance Company and Mid-Continent Casualty Company are insurance companies incorporated in Ohio and based in Tulsa, Oklahoma. Great American Insurance Company issued commercial general liability policies to Landstar from May 3, 2001 until May 3, 2003. Mid-Continent Casualty Company issued Landstar nearly identical policies from May 3, 2003 until May 3, 2007. Both companies share the same address and phone number on the insurance policies issued to Landstar. For the purposes of this opinion, they will be treated as a single entity and referred to by the Court collectively as "Mid-Continent."

Landstar was insured by Mid-Continent under a series of annual commercial general liability policies from May 3, 2001 until May 3, 2007. The policies provided benefits for, among other things, legal representation for occurrences defined under the policy and indemnity for certain awards covered under the policy. Unless otherwise noted in this opinion, all of the policies provided identical coverage.

During the period Landstar was insured by Mid-Continent, Landstar began construction of a home at 1035 Damsel Caroline Drive in Lewisville, Texas. On August 1, 2001, the home's foundation was poured. Donna Cameron closed on the home in January of 2002. On September 24, 2002, Ms. Cameron filed a customer service request with Landstar for damage to the home: exterior trim separating from brick, damage to

paint and drywall, cracking in flatwork and the retaining wall, and more. A second request was filed on February 7, 2003 for many of the same problems. In August of 2004, an engineering firm was called out to the home to evaluate its foundation.

On July 24, 2008, Ms. Cameron filed a lawsuit against Landstar in Texas state court for negligence, breach of contract, breach of warranty, and several other claims. Landstar sent a letter notifying Mid-Continent of the lawsuit on August 15, 2008. Mid-Continent initially denied coverage and declined to provide counsel to Landstar on August 27, 2008, stating that Cameron's petition did not contain dates and Landstar was not a listed insured on several policies.

Ms. Cameron amended her petition on October 31, 2008, adding the date the foundation was poured and the date of closing on the home's sale. Landstar delivered Ms. Cameron's amended petition to Mid-Continent on November 17, 2008. Mid-Continent again denied coverage on December 19, 2008, this time based upon Ms. Cameron's amended petition. Landstar approached Mid-Continent again to reconsider its decisions on February 6, 2009. This time, Mid-Continent agreed to defend Landstar on March 2, 2009 and to cover defense costs from the date of tender of Ms. Cameron's amended petition.

On November 24, 2009, an arbitrator awarded Ms. Cameron $114,180.33 against Landstar for diminution in the home's value, cosmetic repairs, attorneys' fees, and expenses. Mid-Continent received notice of this award on December 1, 2009 when

Landstar requested indemnity coverage under its policies. Mid-Continent twice denied indemnity coverage, on December 7, 2009 and December 23, 2009, on the basis that none of the damages awarded by the arbitrator were covered damages under Landstar's policy.

Landstar filed this lawsuit on January 5, 2010 for violations of the Texas insurance code and breach of contract. Mid-Continent filed its motion for summary judgment on September 30, 2010 and Landstar filed its motion for partial summary judgment on its breach of contract claim the same day. Landstar filed its motion to strike portions of Mid-Continent's appendix on November 10, 2010 and Mid-Continent filed its Motion for Leave to File on November 17, 2010.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Triple Tee Golf, Inc. V. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the non-movant to show that summary judgment should not be

granted; the non-movant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party in the face of all evidence presented. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009). A fact is material if it could affect the outcome of the lawsuit under the governing law. *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III. Analysis

Landstar's breach of contract claim can be divided into two categories: (1) breach of Mid-Continent's alleged duty to defend Landstar against claims by third parties and (2) breach of Mid-Continent's alleged duty to indemnify Landstar against damage awards covered under Landstar's policy.

### A. Duty to Defend

In Texas, an insurer's duty to defend is evaluated under the "Eight Corners" rule, referencing the two pieces of paper involved: (1) the insurance policy that allegedly contains the duty to defend and (2) the petition or complaint filed by the plaintiff in the

underlying lawsuit. *Zurich Am. Ins. Co. v. Nokia, Inc*, 268 S.W.3d 487, 491 (Tex. 2008); *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004)(applying Texas law). The court may not consider extrinsic evidence when determining an insurer's duty to defend, such as discovery responses or summary judgment evidence. *Chapman v. Nat'l Union Fire Ins. Co of Pittsburgh*, 171 S.W.3d 222, 229–31 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The underlying pleading is liberally construed and all doubts are resolved in favor of finding a duty to defend. *Zurich*, 268 S.W.3d at 491. The general rule is that a duty to defend exists if there is potentially any claim in the pleading within the coverage of the policy. *Id*.

1. **Payment of deductible required for duty to defend?**

Initially, the Court must address Mid-Continent's argument that it could not have breached its duty to defend as a matter of law because Landstar has not paid its $50,000 deductible on the policy under which it is submitting these claims. The duty to defend is defined by the terms of the policy. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). Insurance contracts follow the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). Courts strive to effectuate the policy as the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The policies issued by Mid-Continent are straight-forward: "We will have the right and duty to defend the insured against any 'suit' seeking those damages." *See, e.g.,* App to

Def. Mot. at 87, ¶1(a). The policy does not condition the duty to defend upon payment of a deductible.

Deductibles are also normally treated differently from provisions known as self-insured retentions, which require an insured to assume the obligation of providing itself a defense until the retention is exhausted. *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 173 (Tex. App.—Dallas 2008, no pet.). Resolving all doubts in favor of finding a duty to defend, the Court finds that Mid-Continent's argument that Landstar's deductible must have been paid to trigger Mid-Continent's duty to defend is without merit.

### 2. The Policies

Landstar's general commercial liability insurance policies issued by Mid-Continent contain a duty to defend by Mid-Continent for suits seeking damages for (1) bodily injury or property damage (2) caused by an occurrence. *See, e.g.*, App. to Pl. Mot. at 97. The policy defines "property damage" as physical injury to tangible property, including loss of use of the property. *Id.* at 109. An "occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions. *Id.* at 108.

### 3. The Allegations in Cameron's Petitions

The Texas Supreme Court's opinion in *Lamar Homes Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 4 (Tex. 2007), states that allegations of damage to a plaintiff's home

from a defective foundation are sufficient to trigger an insurer's duty to defend under a commercial general liability policy. This Court must determine if the allegations contained in Ms. Cameron's Original Petition filed against Landstar on July 24, 2008 and Ms. Cameron's First Amended Petition filed on October 31, 2008 are sufficient to trigger Mid-Continent's duty to defend.

Mid-Continent argues that neither Ms. Cameron's Original Petition nor her First Amended Petition contained allegations to trigger Mid-Continent's duty to defend under *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008). The actual-injury rule, as adopted by Texas in *Don's Bldg. Supply*, states a duty to defend is triggered when the underlying suit alleges (1) that property damage occurred during the term of the policy and (2) that the property damage was caused by the insured. *Id.* at 31. Mid-Continent argues that Ms. Cameron's petitions did not allege when the property damage occurred. Landstar counters that a date contained in an affidavit attached to Ms. Cameron's Original Petition, coupled with other allegations in the Original Petition, meets Texas' liberal pleading standard as noted in *Zurich*.

a. **Cameron's Original Petition**

Ms. Cameron's Original Petition alleges that Landstar participated in the design of Ms. Cameron's foundation, App. to Pl. Mot. at 3, that Ms. Cameron's foundation sustained substantial movement, *id*. at 4, and that Ms. Cameron's home had shifted and cracked to such a degree that it affected the safety of the home's occupants, *id*. The date

to which Landstar refers is located in Ralph Mansour's Affidavit, attached to Ms. Cameron's Original Petition as Exhibit A. *Id.* at 23–25. Mansour states he reviewed a foundation design letter sent to Landstar and dated May 23, 2001. *Id*. at 24. Mansour opined that the design selected for the foundation of Ms. Cameron's home was not proper. *Id*.

Combined, these allegations assert that Landstar participated in the design process for Ms. Cameron's foundation as early as May 23, 2001, the foundation designed was flawed, and that this flawed design has caused shifting of Ms. Cameron's home to the extent that structural and cosmetic damage occurred. Certainly that qualifies as "potentially" stating a claim against Landstar for property damage caused by an occurrence. *Zurich*, 268 S.W.3d at 491; *Lamar Homes*, 242 S.W.3d at 4. Under Texas' liberal pleading standards, the summary judgment evidence establishes that these allegations were sufficient to invoke Mid-Continent's duty to defend from the date Ms. Cameron's Original Petition was received by Mid-Continent.

b. **Cameron's First Amended Petition**

Even if Mid-Continent's duty to defend was not triggered by Ms. Cameron's Original Petition, which it was, it was triggered by Ms. Cameron's First Amended Petition. The only change between the two petitions was the addition of two dates on the third page: that the foundation was poured on August 10, 2001 and that the sale of the home closed on January 18, 2002. App. to Pl. Mot. at 31.

Most importantly, Mid-Continent agreed to assume defense of the case on March 2, 2009 based on Ms. Cameron's amended petition after denying several requests for months. When questioned about this, Mid-Continent's corporate representative responded that the Coverage Committee "decided they made the wrong decision [about Mid-Continent's duty to defend]. . . and decided to fix it." Pope Depo. at 44:7–10; App. to Pl. Mot. at 452. The summary judgment evidence has established that Ms. Cameron's First Amended Petition alleged that Landstar caused property damage during the term of the policy to trigger Mid-Continent's duty to defend.

B. **Duty to Indemnify**

An insurer's duty to indemnify is separate and distinct from its duty to defend. *D.R. Horton–Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009). A duty to indemnify may exist even when a duty to defend is not found. *Id*. The requirements of a duty to indemnify under Texas law are essentially the same as a duty to defend. *Id.* at 744. The difference is that instead of the pleadings determining whether or not the underlying claim is covered, it's the proof at or before trial in the underlying claim <u>and</u> proof adduced during the coverage litigation between the insured and the insurer. *Id* ("Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. . . when the underlying dispute is resolved before a trial on the merits. . . .").

To make a *prima facie* case, Landstar must demonstrate that the underlying damages award is covered by its policy, meaning that (1) there was "property damage" caused by an "occurrence" and (2) the damages occurred during the coverage period. App. to Pl. Mot. at 97 (defining when a duty to indemnify exists under the insurance policy); *Don's Bldg. Supply,* 267 S.W.3d at 23 (unambiguous contractual language is enforced as written).

Mid-Continent argues that: (1) Landstar has failed to present a *prima facie* case that the damages awarded to Cameron were covered; (2) Landstar's policy excludes coverage for these types of damages; and (3) genuine issues of material fact still exist as to Landstar's claims.

### 1. Landstar's *prima facie* case

Mid-Continent asserts that the only evidence Landstar has advanced to fix Cameron's date of injury is a statement in Landstar's brief in support of its motion about an engineer determining damages began occurring in 2002. Contrary to Mid-Continent's assertions, Landstar has presented customer service requests from Ms. Cameron in September 2002, App. to Pl. Mot. at 394–404, and February 2003, *id.* at 405, complaining of the same problems she asserts in her Original and First Amended Petitions. Landstar also presented evidence that Mr. Gerald Morgan concluded the foundation beams were inadvertently sunk only 31–33 inches into the ground instead of 36 inches as designed during construction in 2001, partially causing the foundation

problems experienced by Ms. Cameron. *Id*. at 380–81. All of this evidence places the date of injury within the coverage period of Landstar's policy.

Mid-Continent also asserts that a shifting foundation is not an "occurrence" within the meaning of the insurance policy, arguing that it was not a "fortuitous, unexpected, and unintended event." *Lamar Homes*, 242 S.W.3d at 8. Mid-Continent asserts that a "foundation constructed on the expansive soils underlying the State of Texas is always going to move." Def. Resp. at 14. The Texas Supreme Court states in *Lamar Homes* that whether or not faulty workmanship was intended or accidental depends on the facts and circumstances of the case. *Id*. at 9. *Lamar Homes* presents a nearly identical situation to the one at bar: the plaintiff homebuilder was sued for damage caused by defects in a home's foundation and was refused a defense by its insurance company. *Lamar Homes*, 242 S.W3d at 5. Though this is a fact-specific inquiry, it's instructive that the Texas Supreme Court has already found damage to a home caused by a defective foundation is an "occurrence" within the meaning of the commercial general liability policy. *Id*. at 9–10. Landstar has presented evidence that it never intended Ms. Cameron's foundation to shift, App. to Pl. Mot. at 377, and that foundation beams were not sunk to the proper level, *id.* at 380–81. The summary judgment evidence establishes that the shifting of Ms. Cameron's foundation was inadvertent and unintended, qualifying it as an "occurrence" within the meaning of Landstar's commercial general liability policy. *Lamar Homes*, 242 S.W.3d at 8.

Mid-Continent next argues that claims for diminution in value are not damages eligible for coverage under the insurance policy. The insurance policy states that Mid-Continent will pay sums that Landstar is "legally obligated" to pay as a result of property damage. App. to Pl. Mot. at 97. Landstar became legally obligated to pay the arbitration award when it was confirmed and judgment was entered on it by the Texas state district court on December 23, 2009. App. to Pl. Mot. at **57**; *Lennar Corp. v. Great Am. Ins. Co*, 200 S.W.3d 651, 680 (Tex. App.—Houston [14th Dist. 1997, no pet.)(a court judgment creates a legal obligation to pay under a commercial general liability policy). Diminution in value has also been accepted by other courts interpreting nearly identical contract language as eligible damages under a commercial general liability policy. *See Mo. Terraazzo Co. v. Iowa Nat. Mut. Ins. Co.*, 740 F.2d 647, 650 (8th Cir. 1984)(applying Missouri law). The arbitrator stated that the diminution in value of Ms. Cameron's home in his award was based on the home's foundation issues. App. to Pl. Mot. at 59. The summary judgment evidence has established that the arbitrator's award for diminution in the value of Ms. Cameron's home is covered by Landstar's policy.

Mid-Continent also argues that damages to lift Ms. Cameron's foundation are not covered by the policy because there was no damage to the foundation itself. However, Mid-Continent does not identify which portion of the arbitration award it believes contains damages to lift Ms. Cameron's foundation. The only portions of the award assessed against Landstar concerning Ms. Cameron's home are for diminution in value

and cosmetic repairs. App. to Pl. Mot. at 63. Both of these items are covered under the insurance policy as "property damage" because they are physical injuries to tangible property. App. to 109, ¶17(a); *Lamar Homes*, 242 S.W.3d at 10. This argument is without merit.

 2. **Exclusions to coverage**

Mid-Continent asserts that the "earth movement" exclusion in its policy with Landstar applies to the entire arbitration award. The "earth movement" exclusion applies to damage caused by earthquakes, landslides, and other movements of land, earth or mud. This exclusion has been specifically applied in the context of a defective foundation case. *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222 (5th Cir. 2009). Applying Texas law, the Fifth Circuit rejected the position that a shifting foundation causing physical damage to the house it is supporting falls within the "earth movement" exclusion. *Id.* at 226. Mid-Continent's argument is without merit.

Mid-Continent also argues that the CG 22 94 exclusion added to Landstar's policies from May 4, 2004 to May 4, 2007 applies to the arbitration award. This exclusion, commonly called the "Your Work" exclusion, removes coverage for damage to work performed by subcontractors on the general contractor's behalf. *See, e.g.,* App. to Def. Mot. at 380. Mid-Continent argues that property damage occurring on or after May 4, 2004 is not covered and that a significant amount of damage to Ms. Cameron's home occurred after May 4, 2004.

Landstar points to *Don's Building Supply*, arguing that the date of actual injury occurred before the exclusions went into effect. *See Don's Bldg. Supply*, 267 S.W.3d at 24–25. *Don's Bldg. Supply* concerned an insurer's duty to defend, but its logic extends equally to an insurer's duty to indemnify. The Texas Supreme Court concluded that the date of an "occurrence" was the date actual physical damage to the property occurred. *Id*. at 24. Landstar has demonstrated that damage to the property occurred before May 4, 2004: service requests by Ms. Cameron in September 2002, App. to Pl. Mot. at 394–404, and February 2003, *id*. at 405. Mid-Continent argues, without citing this Court to any evidence, that the amounts awarded by the arbitrator included compensation for damages incurred after May 4, 2004. *See* Def. Resp. at 19–20. Instead, Mid-Continent relies on a statement from an unidentified expert witness that shifting of Ms. Cameron's foundation took place between 2004 and 2007 or 2008. App. to Def. Resp., Exhibit #1 at 4. The summary judgment evidence establishes that the "Your Work" exclusion does not apply to Landstar's indemnification claim.

### 3. Genuine issues of material fact

Mid-Continent finally argues that genuine issues of material fact still exist: (1) whether or not Landstar has satisfied its deductible; (2) whether Landstar is entitled to fees incurred after March 2, 2009 when Mid-Continent agreed to represent Landstar; (3) the reasonableness and necessity of attorneys' fees for Landstar; and (4) the breakdown for covered and uncovered attorneys' fees from the underlying claim.

As discussed above, the satisfaction of Landstar's deductible is not required before Landstar may invoke its right to a defense or indemnification under the insurance policy. *See, e.g.,* App to Def. Mot. at 87, ¶1(a); *GuideOne Elite Ins. Co.,* 197 S.W.3d at 310. Satisfaction of the deductible has no bearing on Mid-Continent's liability. None of Mid-Continent's other arguments raises an issue of material fact because they do not relate to Mid-Continent's breach of its contractual duty to defend and indemnify Landstar. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009)(only issues that affect the outcome under the governing law are material). All of Mid-Continent's arguments relate to potential damage calculations. Therefore, no genuine issues of material fact exist as to Mid-Continent's liability.

    C.    **Mid-Continent's Motions**

Mid-Continent's Motion for Summary Judgment is denied. As a result, Landstar's Motion to Strike is denied as moot and Mid-Continent's Motion for Leave to File is also denied as moot. It was not necessary to consider the last two motions because of the outcome of the first.

IV.    **Conclusion**

Because Landstar has demonstrated that there is no genuine issue of material fact that Mid-Continent breached its contractual duty to defend and indemnify Landstar, Landstar's Motion for Partial Summary Judgment is **GRANTED as to liability.** Mid-

Continent's Motion for Summary Judgment is **DENIED**, Landstar's Motion to Strike is **DENIED as moot**, and Mid-Continent's Motion for Leave to File is **DENIED as moot**.

**SO ORDERED.**

Signed December 13th, 2010.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE